[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-12895

Non-Argument Calendar

————————————————

HANNIBAL BURESS,

Plaintiff-Appellee,

*versus*

CITY OF MIAMI,
Miami, et al.,

Defendants,

LUIS VERNE,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23078-RNS

———————————————

Before JORDAN, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Miami Police Department Officer Luis Verne appeals the district court's denial of qualified immunity and state-law immunity in his arrest of Hannibal Buress.  The district court concluded there were genuine issues of material fact remaining regarding whether Officer Verne had arguable probable cause to arrest Buress for the crimes of (1) bribery and unlawful compensation or reward for official behavior, Fla. Stat. §§ 838.015-.016; (2) disorderly intoxication, Fla. Stat. § 856.011; (3) disorderly conduct, Fla. Stat. § 877.03; (4) trespass, Fla. Stat. § 810.09;[1] and (5) resisting an officer without violence, Fla. Stat. § 843.02.  The district court similarly determined Buress raised a genuine issue of material fact regarding whether Officer Verne violated Buress's First Amendment rights and that Officer Verne was not entitled to state-law immunity on

---

[1] Officer Verne does not appeal the district court's conclusion there was "sufficient debate regarding the underlying facts to deny summary judgment" on Verne's assertion he had arguable probable cause to arrest Buress for trespass.

Buress's state law claims.  After review,[2] we affirm the district court.[3]

## I.  BACKGROUND

On December 9, 2017, Buress, a well-known stand-up comedian and actor, was visiting Miami for the Art Basel festival.  Buress spent "substantial time" having drinks at Gramps Bar in the Wynwood area.  At some point that night, Buress's phone died, and Buress walked toward the corner of NW 2nd Avenue and NW 20th Terrace to find a ride back to his hotel.  Officer Verne was posted at that corner, and Buress walked up to him and said "call me an Uber and I'll give you $20."  Verne said "no" to Buress's request.

At this point, the two parties' accounts of the facts diverge.  Officer Verne states Buress got closer to him and began going back and forth with him and yelling a bunch of profanities.  Buress states

---

[2] We review the denial of qualified immunity *de novo*.  *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013).

[3] Buress asserts we should dismiss Officer Verne's appeal for lack of jurisdiction because his appeal asks this Court to credit his version of the facts to find he had arguable probable cause to arrest Buress, and a solely factual challenge cannot be brought on interlocutory appeal.  *See English v. City of Gainesville*, 75 F.4th 1151, 1156 (11th Cir. 2023).  In *English*, we explained this Court lacks interlocutory jurisdiction when the only issues appealed are evidentiary sufficiency issues.  *English*, 75 F.4th at 1155.  However, when both evidentiary sufficiency and whether the law was clearly established are at issue, this Court has jurisdiction for *de novo* review.  *Id*. at 1155-56.  While much of Officer Verne's appeal is appealing evidentiary sufficiency, some of his arguments also regard whether clearly established law regarding arguable probable cause for some of the offenses exists, so we have jurisdiction over the appeal.  *See id*.

that after Officer Verne refused his request, he walked away and did not say anything.  Buress then looked back and observed Officer Verne kissing a woman who came out of a bar.  At that point, Buress "yelled back" at Officer Verne about how he was kissing this woman but could not call him an Uber.  Buress and Officer Verne agree they had words back and forth.  Buress admits using profanity, but states it was joking and lighthearted.

Buress walked away and into a bar.  Officer Verne followed Buress into the bar and told him to leave.  Buress complied, but the parties dispute how quickly he did so.  Officer Verne asserts Buress was "belligerent," "visibly drunk," and "could barely walk."  Buress denies being belligerent or unable to walk.  Buress does not deny that he was visibly drunk and agrees that Officer Verne thought he was drunk.

As Buress left the bar with Officer Verne following him, Officer Verne turned on his body-worn camera.  For the first 30 seconds of video, there is no audio, but video shows Buress standing several feet away from Officer Verne, talking animatedly with him while smiling.  The audio then begins and Buress states "put the camera on."  Officer Verne responds, "it's been on, G."  Buress then takes one small step toward Officer Verne and while still a few feet away says, "Hey, it's me, what's up, this cop, he's stupid.  Hey, what's happening?"  Buress then takes another step toward Officer Verne and says directly to the camera, "Hey, what's up?  It's me Hannibal Buress, this cop is stupid as fuck.  Hey, put this camera on."  Officer Verne begins walking toward Buress and says, "Get

out of here before you," before trailing off. Buress backs away and says "Hey, what's up YouTube?" while at the same time, Verne says "Get out of here," again.  Less than a second later, Officer Verne says "Alright, put your hands behind your back."

As Buress continues backing away, he asks Verne, "for what?" and "what's the charge?" multiple times as Verne says, "I'll let you know as soon as you put your hands behind your back." Officer Verne then states, "Are you going to resist me?" and Buress immediately complies by allowing Officer Verne to grab his arm and begin handcuffing him.  While Buress is being handcuffed, three people walk by calling Buress "Hans" and begin to record the arrest on their phones.  Buress raises his free hand for a few seconds to say hello to the passerby, but then immediately puts it down for Officer Verne to handcuff him.  Throughout, Buress continues to ask why he is being arrested, but allows Officer Verne to handcuff him and stands still without requiring any restraint.  Buress is moved to a squad car while repeatedly asking about the reason for the arrest.  Officer Verne states Buress is being detained for trespassing and disorderly intoxication.  Buress then says Officer Verne is just "salty" that he "roasted his ass."  Officer Verne responds "Yeah . . . I am."

## II.  DISCUSSION

To receive qualified immunity, an "officer bears the initial burden to prove that he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017).  The plaintiff then bears the burden of showing "the defendant violated a

constitutional right" and "the right was clearly established at the time of the violation." *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012). Because Buress does not dispute Officer Verne was engaged in a discretionary function, he bears the burden of proving Officer Verne was not entitled to qualified immunity.

Buress asserts Officer Verne violated the Fourth Amendment by falsely arresting him. "To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022). "Accordingly, when the government has probable cause to arrest someone, a false arrest claim necessarily fails." *Id.*

In the context of an arrest, probable cause exists "when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898-99 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). In assessing whether there was probable cause for an arrest, we "ask whether a reasonable officer could conclude that there was a substantial chance of criminal activity." *Id.* at 902 (quotation marks and alteration omitted). "Probable cause does not require conclusive evidence and is not a high bar." *Id.* at 899 (quotation marks omitted).

An officer need not have actual probable cause, but only arguable probable cause, to receive qualified immunity. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where reasonable officers in the same circumstances

and possessing the same knowledge as the [officer] could have believed that probable cause existed to arrest." *Id.* (quotation marks omitted). "Showing arguable probable cause does not . . . require proving every element of a crime." *Id.*

Thus, we now turn to whether there was arguable probable cause to arrest Buress. To determine whether there was arguable probable cause for Buress's arrest, we ask whether a reasonable officer could have believed there was a substantial chance he had committed the crimes of (1) bribery and unlawful compensation or reward for official behavior under Fla. Stat. §§ 838.015-.016; (2) disorderly intoxication and disorderly conduct under Fla. Stat. §§ 856.011 and 877.03; and (3) resisting an officer without violence under § 843.02. We will address each crime in turn.

A. *Bribery and Unlawful Compensation or Reward for Official Behavior*

To determine whether there was probable cause or arguable probable cause for Buress to be arrested for bribery or unlawful compensation or reward for official conduct, we ask whether a reasonable officer could have believed there was a substantial chance he had committed these crimes. The elements of bribery under Florida law are: "(1) knowledge on the part of the accused of the official capacity of the person to whom the bribe is offered, (2) the offering of a thing of value, and (3) the intent to influence the Official action of the person to whom the bribe is offered." *Nell v. State*, 277 So. 2d 1, 5 (Fla. 1973). The elements of unlawful compensation or reward for official behavior also include the act being compensated or rewarded is in the official discretion of the public

servant, in violation of a public duty of the public servant, or in performance of the public servant's public duty.    Fla. Stat. § 838.016; *State v. Castillo*,  877 So. 2d 690, 694 n.6 (2004).

The district court did not err in concluding that Officer Verne did not have arguable or actual probable cause to arrest Buress for bribery or unlawful compensation or reward for official behavior because Buress's offer did not implicate any official act.  The parties agree that Buress approached Officer Verne and stated, "call me an Uber and I'll give you $20."  Calling an Uber is not an official act, so the bribery and unlawful compensation statutes are not implicated.

Buress asserts the law was clearly established in Florida that bribery and unlawful compensation applied only to official acts. *See Castillo*, 877 So. 2d at 691 (Florida's unlawful compensation statute "prohibits public officials from seeking or accepting unauthorized benefits in return for performance or nonperformance of *official duties*" (emphasis added)).  Officer Verne asserts that a member of the public offering a police officer money for *any* act, whether an official act or not, is arguable probable cause for a bribery or unlawful compensation charge.  We disagree.  Florida law is clear that the bribe or unlawful compensation must be offered for an official act.  While we acknowledge that every element of a crime does not have to be present for arguable probable cause, a reasonable officer in Officer Verne's position would not believe that $20 offered to call an Uber was a bribe or unlawful compensation based on an official act.  We affirm on this issue.

23-12895                Opinion of the Court                9

B. *Disorderly Intoxication and Disorderly Conduct*

Under Florida's disorderly intoxication statute, "[n]o person in the state shall be intoxicated and endanger the safety of another person or property, and no person in the state shall be intoxicated or drink any alcoholic beverage in a public place or in or upon any public conveyance and cause a public disturbance." Fla. Stat. § 856.011. The Florida Supreme Court has clarified this statute is "not an attempt to regulate the morality of any individual," but rather requires an officer to believe that an individual's behavior is endangering public safety or causing a public disturbance. *State v. Holden*, 299 So. 2d 8, 9 (Fla. 1974).

Florida law also provides "[w]hoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct," is guilty of disorderly conduct. Fla. Stat. § 877.03.

The district court did not err in finding, when viewing the evidence in the light most favorable to Buress, that there is a genuine factual dispute over whether Officer Verne had actual or arguable probable cause to arrest Buress for disorderly intoxication or disorderly conduct. Both parties agree that Buress was intoxicated and insulted Officer Verne, including using profanity. Buress, however, maintains he used a joking, light-hearted tone. And the First Amendment protects "[t]he freedom of individuals verbally to

oppose or challenge police action without thereby risking arrest." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987).

> [T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Speech is often provocative and challenging. But it is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

*Id.* at 461 (quotation marks and alterations omitted). Thus, while Buress admittedly insulted Officer Verne, that alone is not enough for a disorderly intoxication or disorderly conduct charge.

As to causing a public disturbance, the video evidence supports Buress's version of events that his actions were not drawing a crowd, and that three bystanders stopped to record him only after Officer Verne began arresting him. Before that point, the video shows that people were walking by Buress and Officer Verne. Nor is there any evidence Buress was endangering public safety. Buress's version of events presents a jury question on whether Officer Verne had arguable probable cause to arrest him for disorderly intoxication or disorderly conduct. We affirm the district court on this claim.

## C. Resisting an Officer without Violence

"Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing

violence to the person of the officer, shall be guilty of" resisting an officer without violence. Fla. Stat. § 843.02. "To support a conviction under § 843.02, the state must show: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1315 (11th Cir. 2003). Officer Verne could not be carrying out "the lawful execution of any legal duty" without arguable probable cause to arrest Buress. Thus, Officer Verne could not have arguable probable cause to arrest Buress for resisting arrest without arguable probable cause to arrest Buress for another offense.

As to this claim, Officer Verne asserts that some of the facts and inferences the district court found in the light most favorable to Buress were controverted by video evidence. Officer Verne asserts the video shows that Buress took ten steps away from Officer Verne after being instructed to position his hands for handcuffing and Buress used his free hand to engage with the three individuals who witnessed and videoed the arrest. The district court did not ignore this video evidence, however. The district court denied qualified immunity on the resisting arrest without violence claim because there is a jury question regarding whether Officer Verne lacked probable cause to arrest in the first place, and thus even if there is a jury question regarding whether Buress resisted without violence, Buress did not resist "in the lawful execution" of a legal duty. These facts from the video evidence did not affect the district court's analysis of this claim. We affirm the district court on this claim.

### D. First Amendment Retaliation

The district court also did not err in finding Officer Verne is not entitled to qualified immunity from Buress's first amendment retaliation claims. "This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005). Buress alleged sufficient facts that Officer Verne retaliated against him by falsely arresting him for exercising his First Amendment rights. Officer Verne is not entitled to qualified immunity on this claim.

### E. Florida law claims

Similarly, Officer Verne is not entitled to immunity from Buress's state law claims alleging malicious prosecution and false arrest. "Florida's immunity scheme shields an officer from individual liability for on-the-job torts as long as the officer did not commit the tort in bad faith, maliciously, or wantonly." *Baxter v. Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022). Buress has alleged sufficient facts to allow a reasonable jury to conclude Officer Verne acted in bad faith, maliciously, or wantonly by arresting Buress without probable cause. In particular, Officer Verne's agreement with Buress's statement that Officer Verne arrested him because he was "salty" that he "roasted" him could support Buress's claim.

### III. CONCLUSION

Genuine issues of material fact remain regarding whether Officer Verne falsely arrested Buress in retaliation for Buress exercising his First Amendment rights, and under Buress's version of

23-12895          Opinion of the Court          13

the facts, a reasonable officer in Officer Verne's position would not believe arguable probable cause existed to arrest Buress under clearly established law.    We affirm the district court.

**AFFIRMED.**